*This opinion is subject to revision before final
publication in the Pacific Reporter*

**2014 UT 60**

IN THE

# SUPREME COURT OF THE STATE OF UTAH

UTAH RESOURCES INTERNATIONAL, INC.,
a Utah Corporation,
*Appellant,*

*v.*

MARK TECHNOLOGIES CORPORATION and
KENNETH G. HANSEN,
*Appellees.*

No. 20130131
December 23, 2014

Third District, Salt Lake
The Honorable Deno G. Himonas
No. 040918982

Attorneys:

John H. Bogart, Salt Lake City, Craig M. White, Chicago, IL,
for appellant

Bruce J. Boehm, Salt Lake City, for appellees

CHIEF JUSTICE DURRANT authored the opinion of the Court, in which
ASSOCIATE CHIEF JUSTICE NEHRING, JUSTICE DURHAM,
JUSTICE PARRISH, and JUSTICE LEE joined.

CHIEF JUSTICE DURRANT, opinion of the Court:

## Introduction

¶1    After the district court denied Utah Resources International, Inc.'s (URI) amended motion to stay enforcement of the judgment (Amended Motion) in this appeal's companion case (valuation case), URI filed an application for a stay with this court under rule 8 of the Utah Rules of Appellate Procedure, asking for essentially the same relief. While that application was pending, URI filed a separate appeal, arguing that the district court improvidently denied its request to abate interest as a term of the stay under rules 62 and 60(b) of the Utah Rules of Civil Procedure. We later denied URI's

request under rule 8 but permitted the parties to brief the issue of whether this appeal was moot because we had denied URI's rule 8 motion. The parties instead briefed the question of whether the *valuation case* was moot—a question that we address separately in that appeal.[1]

¶2    As we clarify in our opinion below, the district court did not abuse its discretion in refusing to abate interest under rules 62 and 60(b) of the Utah Rules of Civil Procedure. District courts do not have authority to abate interest under rule 62, and URI never requested relief under rule 60(b) with the district court. Accordingly, the district court did not abuse its discretion in denying URI's Amended Motion.

## Background

¶3    In June 2004, appellant URI conducted a share consolidation transaction. Appellees Mark Technologies Corporation (MTC) and Kenneth G. Hansen dissented (Dissenters). Section 16-10a-1302 of the Utah Code entitles such dissenters to payment of the fair value of their shares, but the parties were unable to agree to the fair value. Pursuant to section 16-10a-1330 of the Utah Code, URI petitioned the district court to determine the fair value of the shares. In May 2012, the district court entered judgment, determining that the fair value of each share was $10,722. The district court awarded MTC $1,347,090.61 plus ten percent interest compounded annually and awarded Mr. Hansen $335,002.50 plus ten percent interest compounded annually. The merits of that determination are before this court in a separate appeal.

¶4    In response, URI filed a motion with the district court under rule 62 of the Utah Rules of Civil Procedure to stay execution pending the appeal. In its motion, URI requested that, in lieu of a supersedeas bond, the district court allow URI to deposit with the court the principal amount of the judgments, plus three years of interest. Per rule 62(j)(2)(A), this is the presumptive amount the court should require to stay execution. Shortly after URI filed this motion, the Dissenters began execution proceedings and recorded the judgment, which created a lien against URI's property.

¶5    Before the district court ruled on the motion, and in an effort to stave off the compounding interest, URI sent an email to the Dissenters, asking if they would be interested in entering into an alternative agreement. In the email, URI proposed to pay the Dissenters the full judgment amount, but with key stipulations that

---

[1] *Utah Res. Int'l, Inc. v. Mark Techs. Corp.*, 2014 UT 59, ¶¶ 28–33.

are now the center of this controversy: (1) that URI preserves its right to appeal, (2) that the payment stays the judgment, (3) that all liens are released, (4) that further interest on the judgment is waived, (5) that the Dissenters repay URI to the extent the judgments are altered on appeal, and (6) that the judgments be deemed satisfied and that a satisfaction of judgment be filed should the judgments be affirmed on appeal.

¶6 Before the Dissenters responded, the district court granted URI's motion to stay, provided that it deposit the principal amount plus three years' worth of interest. The motion was granted without prejudice to URI's right to pay the judgment in lieu of or subsequent to the deposit. Thereafter, Mr. Hansen informed URI that he would not agree to URI's proposed payment stipulations, and MTC proposed a few changes to the agreement, including that interest continue to accrue at five percent during the appeal. In the end, the parties did not enter into any agreement.

¶7 A week after the court approved its initial stay request, URI filed its Amended Motion, seeking two changes to its original motion. First, it sought permission to deposit only the amount it owed at that point to the Dissenters, without any future interest. Second, it asked the district court to order that the accrual of interest was abated because the Dissenters rejected URI's offer to pay the judgment by the previously mentioned stipulations. The district court denied the Amended Motion, citing its lack of statutory or equitable power, but the judge did note that URI's willingness to pay the judgments centered on its desire to abate interest and not to waive its right to appeal. The present appeal, which was filed on February 5, 2013, stems from this order.

¶8 At the suggestion of the district court, URI paid part of the judgments in the amounts of $750,000 to MTC and $185,000 to Hansen. In the letter delivering the payment, URI stated that it did not intend to waive its current appeal and that it was paying only to abate interest and reduce the threat of postjudgment enforcement proceedings. The Dissenters accepted the payments and filed partial satisfactions of judgment.

¶9 On January 17, 2013, the Dissenters obtained a supplemental order directing URI to appear for a debtor's examination. On January 25, URI filed a motion with the district court to vacate that order, which was denied. On the same day, URI filed a new motion to stay execution directly with this court under rule 8 of the Utah Rules of Appellate Procedure. We denied URI's motion and further requested that the parties submit memoranda addressing the

question of whether our denial of URI's rule 8 motion mooted URI's appeal of the district court's denial of the Amended Motion. In the end, we deferred our consideration of mootness until plenary consideration of the merits of URI's appeal.

¶10 In April 2013, URI informed the Dissenters that it had placed the remaining amount of the judgment, with interest, in a single bank account. URI stated that it placed the money in a single account in hopes of forestalling the Dissenters' enforcement efforts. As of today's date, the Dissenters have not collected the money. We have jurisdiction pursuant to Utah Code section 78A-3-102(3)(j).

## Standard of Review

¶11  URI brings its challenge under rules 62 and 60(b) of the Utah Rules of Civil Procedure. As to URI's request for a stay under rule 62, "[t]he decision to stay enforcement of a judgment is within the discretion of the reviewing court,"[2] and we review the district court's denial of URI's Amended Motion for an abuse of discretion.[3] Furthermore, "a district court has broad discretion in ruling on a motion to set aside an order or judgment under rule 60(b), and [t]hus, we review a district court's denial of a 60(b) motion under an abuse of discretion standard."[4]

## Analysis

¶12 URI challenges two interrelated aspects of the district court's ruling below: (1) its failure to grant a stay under URI's desired conditions and (2) its failure to abate interest as of June 11, 2012—the date on which URI claims it properly tendered payment of the judgment. At bottom, however, URI is merely challenging the district court's refusal to approve a lesser amount of security by abating interest, since the court already approved URI's previous request for a stay conditioned on a deposit of the presumptive statutory security amount.

---

[2] *Jensen v. Schwendiman*, 744 P.2d 1026, 1027 (Utah Ct. App. 1987).

[3] *See Olympia Equip. Leasing Co. v. W. Union Tel. Co.*, 786 F.2d 794, 798 (7th Cir. 1986) ("The judgment [the district court judge] had to make" in approving an alternative form of security under Federal Rule of Civil Procedure 62 "was discretionary—equitable—judgmental—in a strong sense which limits the scope of appellate review.").

[4] *Metro. Water Dist. v. Sorf*, 2013 UT 27, ¶ 12, 304 P.3d 824 (alteration in original) (internal quotation marks omitted).

¶13 As explained below, the district court did not err in declining to abate interest, and it was correct in ruling that it lacked authority to abate interest under rule 62. Furthermore, we do not review URI's rule 60(b) challenge, since URI never filed a rule 60(b) motion in the district court. To properly obtain review of the abatement of interest issue, URI needed to tender payment of the judgment and then seek a satisfaction of judgment with the district court under rule 58B of the Utah Rules of Civil Procedure. URI never tendered payment of the judgment, let alone filed a motion under rule 58B. The district court therefore did not abuse its discretion in denying URI's request to abate interest.

## I. The District Court Properly Declined to Abate Interest and Grant an Alternative Stay Request

¶14 As we explain below, it was not error for the district court to refuse to abate interest under rules 62 and 60(b), since district courts do not have authority to do so under rule 62, and because URI never requested relief in the district court under rule 60(b). Furthermore, we clarify that a party's request to abate interest is properly done under rule 58B by seeking a satisfaction of the judgment.

### A. A Party May Both Apply for a Stay Under Rule 8 and Appeal From a District Court's Order Denying Its Request for a Stay Under Rule 62

¶15 Under rule 62(d) of the Utah Rules of Civil Procedure, a judgment debtor may seek a stay of execution from a judgment "by giving a supersedeas bond." If the district court denies the judgment debtor's request, or fails to grant the specific relief requested, the judgment debtor may file an application for a stay in the appellate court pursuant to rule 8 of the Utah Rules of Appellate Procedure. In that instance, our review of the application is de novo, though the application must show "that the trial court has denied an application, or has failed to afford the relief which the applicant requested, with the reasons given by the trial court for its action."[5]

¶16 Additionally, the judgment debtor may challenge the district court's denial of his request for a stay under rule 62 by separately appealing from the order. The Dissenters argue that this is a nonappealable order, and that this court therefore lacks jurisdiction to hear the appeal. In support of this position, they cite to *McVinnie v. University of Utah Hospital*, a court of appeals case, wherein the court ruled that it was improper to appeal from a denial of a motion

---

[5] UTAH R. APP. P. 8(a).

to stay.[6] But apart from this case, the Dissenters do not cite, and we do not find, any authority in our caselaw or rules that would preclude a judgment debtor from appealing from such an order. Quite the contrary, rule 3 of the Utah Rules of Appellate Procedure states that parties may "appeal from *all* final orders and judgments" issued by a district court.[7] This includes all final postjudgment orders, though postjudgment orders are also "independently subject to the test of finality, according to their own substance and effect."[8] A denial of a motion to stay enforcement under rule 62 is a final postjudgment order as well, since "the effect of the order . . . [is] to determine substantial rights . . . and to terminate finally the litigation."[9]

¶17  The effect of a party's appeal from an order under rule 62 is also different in kind than an application for a stay under rule 8. For instance, our expedited review under rule 8 is limited to the facts of the case and whether a stay is warranted; we neither defer to the district court, nor do we correct errors in the district court's ruling. By contrast, a party may challenge the district court's order under rule 62 in a separate appeal, at which time we will review the district court's order for an abuse of discretion and correct any errors in the district court's judgment, including misinterpretations or misapplications of the governing rules. Here, URI's only opportunity to challenge the district court's interpretation of its authority under rule 62 was in filing an appeal from the district court's order. Accordingly, parties may both apply for a stay under appellate rule 8 and appeal from an order under civil rule 62, depending on the nature of their challenge. Although as discussed in the following section, district courts do not have authority to abate interest under rule 62, so URI's challenge in this case fails.

*B. The District Court Lacked Authority to Abate Interest Under Rule 62*

¶18 Rule 62(d) of the Utah Rules of Civil Procedure allows district courts to stay enforcement of a judgment pending appeal, but it requires the appellant to give a supersedeas bond to obtain the stay. In lieu of a supersedeas bond, the court may permit one of two alternatives: first, the court "[u]pon motion and good cause shown,

---

[6] 2004 UT App 63U, para. 5 (per curiam) ("Rather than an appeal, a properly supported motion for stay should have been filed in the appellate court after the trial court's denial.")

[7] UTAH R. APP. P. 3(a) (emphasis added).

[8] *Cahoon v. Cahoon*, 641 P.2d 140, 142 (Utah 1982).

[9] *Id.*

. . . may permit a deposit of money in court or other security to be given in lieu of giving a supersedeas bond;"[10] second, the parties may either stipulate to waive the bond requirement altogether, or they may "agree to an alternate form of security."[11]

¶19 Unless the parties stipulate to waive the bond requirement, district court judges must apply one of the forms of security prescribed by the rule. And regardless of the specific form in which the security is given, the security must be "in an amount that adequately protects the judgment creditor against loss or damage occasioned by the appeal."[12] The rule then provides several factors to consider in setting this amount, but goes on to note that, despite these factors, "the presumptive amount of a bond for compensatory damages is the amount of the compensatory damages plus costs and attorney fees, as applicable, plus *3 years of interest at the applicable interest rate*."[13] Here, the applicable interest rate was set by statute at ten percent, compounded annually.[14]

¶20 The rule does permit district courts to approve a bond amount that is *less* than the judgment or even the presumptive amount described above. In fact, one of the factors the court may consider in setting the amount of security is "the respective harm to the parties from setting a higher *or lower* amount."[15] Furthermore, the rule provides that "[i]f the court permits a bond that is *less than* the presumptive amount of compensatory damages, the court may also enter such orders as are necessary to protect the judgment creditor during the appeal."[16] But even though the rule permits district courts to approve a lesser amount of security, their decision to do so is entirely dependent on whether that amount would "adequately protect[] the judgment creditor against loss or damage

---

[10] UTAH R. CIV. P. 62(i)(2).

[11] *Id.* 62(i)(3).

[12] *Id.* 62(j)(1).

[13] *Id.* 62(j)(2)(A) (emphasis added).

[14] UTAH CODE § 15-1-1(2); *see also id.* § 16-10a-1301(5) (defining interest as "interest from the effective date of the corporate action until the date of payment, at the statutory rate set forth in Section 15-1-1, compounded annually").

[15] UTAH R. CIV. P. 62(j)(1)(E) (emphasis added).

[16] *Id.* 62(j)(3) (emphasis added).

occasioned by the appeal."[17] Absent an order protecting the judgment creditor in some additional way, an amount of security that excludes interest will not adequately protect the judgment creditor against losses during the pendency of the appeal.

¶21 Here, URI contends that it does not challenge the amount of the security required by the court, but rather challenges the fact that "the district court passed on the question" of the revised security request following its alleged tender of payment. We conclude that the district court did not err, since rule 62 prevented the court from approving URI's request. As shown above, the district court was required under rule 62 to approve an amount of security that would protect the Dissenters during the pendency of the appeal. Having failed to properly tender payment of the judgment, as discussed below,[18] interest continued to accrue from the effective date of the corporate action, and the district court lacked the authority under rule 62 to abate interest from URI's requested date. Accordingly, the district court did not abuse its discretion in declining to abate interest, since it had no authority to do so under rule 62.

*C. Rule 60(b) Is an Improper Route to Seek Abatement of Interest, and URI Never Properly Raised a Request Under Rule 60(b) Regardless*

¶22 On appeal, URI also argues that the district court erred in not abating interest under rule 60(b) of the Utah Rules of Civil Procedure. As discussed below, URI never made a proper request under rule 60(b), and district courts do not have authority to abate interest under rule 60(b) even if URI had properly captioned its request. We accordingly reject URI's argument and affirm the district court's refusal to rule on the abatement of interest issue on this argument as well.

1. URI's Motion Was Not a Rule 60(b) Motion

¶23 To begin, URI argues that the second request in its Amended Motion (its request to abate interest) was essentially a request under rule 60(b)(5)—that it was "no longer equitable that the judgment should have prospective application." But we cannot review URI's request under rule 60(b) because URI in no way argued for relief under rule 60(b) before the district court.

¶24 When a postjudgment motion does not properly reference the appropriate rule, we have repudiated the practice of rescuing such motions by construing them in accordance with our rules of

---

[17] *Id*. 62(j)(1).

[18] *See infra* ¶¶ 34–40.

procedure. In *Workers Compensation Fund v. Argonaut Insurance Co.*, the appellant had filed an "objection to judgment" with the district court and on appeal argued that the motion should be construed as either a rule 59 motion or a rule 60(b) motion.[19] We declined to do so and noted that "the form of a rule 60(b) motion does matter and attorneys requesting relief under rule 60(b) should notify the court that they are seeking relief under that rule."[20] Failing to cite the proper rule places the burden of research and argument on the court and also prejudices the opposing party by making it more difficult to respond to the motion.[21] Further, the rules "are designed to provide a pattern of regularity of procedure which the parties and the courts can follow and rely upon."[22] Allowing parties to change the form of their motions on appeal invites exactly the kind of confusion our rules were designed to avoid.

¶25 URI attempts to distinguish our decision in *Argonaut* by contrasting it with our more recent decision in *In re Discipline of Rasmussen*.[23] In *Rasmussen*, we held that a district court *may* entertain a rule 60(b) motion not expressly argued as such. We distinguished *Argonaut* by noting that there is a difference between a "district court's *denial* of a motion for failure to identify its essential basis" and "a decision *granting* a motion that we now deem properly presented."[24] Because the district court could have viewed the request as a motion under rule 60(b) and chose to grant it, we affirmed the decision. This stands in direct contrast with *Argonaut*, where the district court denied the motion. In summary, a district court may consider a motion under rule 60(b) even if the movant does not argue it as such, but the movant cannot, *on appeal*, recharacterize a motion as a rule 60(b) motion when it was never considered as such below.

¶26 The situation in this case is governed by *Argonaut*. URI never cited rule 60; rather, it raised both of its requests (for a stay

---

[19] 2011 UT 61, ¶ 1, 266 P.3d 792.

[20] *Id.* ¶ 13; *see also Gillett v. Price*, 2006 UT 24, ¶ 8, 135 P.3d 861 ("Hereafter, when a party seeks relief from a judgment, it must turn to the rules to determine whether relief exists, and if so, direct the court to the specific relief available.").

[21] *Argonaut*, 2011 UT 61, ¶ 13.

[22] *Id.* (internal quotation marks omitted).

[23] 2013 UT 14, 299 P.3d 1050.

[24] *Id.* ¶ 14.

and to abate interest) under rule 62, citing *only* to rule 62. The district court denied the motion and as in *Argonaut*, the court did not err in failing to construe the motion under rule 60(b), because the rule was never cited, and further, no language from rule 60(b) was employed in URI's motion. To rule otherwise would place a greater weight of research and argument on district courts—a practice we repudiated in *Argonaut*. While *Rasmussen* does permit a district court to consider a request for relief as, in effect, a motion under rule 60(b), it does not make it error to fail to do so, and the Dissenters should have been afforded the opportunity to respond to a motion that was properly captioned under rule 60(b). Accordingly, we decline to review the motion as a rule 60(b) motion.

2. Rule 60(b) Does Not Give District Courts Authority to Abate Interest

¶27 Even if we were to review URI's request as a rule 60(b) motion, the rule does not give district courts authority to abate interest. URI argues that it requested relief under rule 60(b)(5), which states:

> [T]he court may in the furtherance of justice relieve a party or his legal representative from a final judgment, order, or proceeding [if] . . . the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application.[25]

There is no dispute that a denial of a postjudgment motion under rule 60(b)(5) is a final order, so the only real question is whether it was "no longer equitable that the judgment should have prospective application." This raises two sub-issues: (1) which situations favor invoking a court's power of equity and (2) whether a party is challenging the "prospective" effect of a judgment or is seeking to alter the terms of a judgment that is remedial in nature. URI argues that the district court should have abated interest under this rule, since it would have been inequitable to continue to compound interest after the Dissenters refused tender of payment. We disagree, since this rule does not give district courts authority to abate interest.

¶28 To begin, the court's power of equity is only to be applied under the rule when highly significant changes alter the landscape of a judgment—for instance, "subsequent legislation, a change in the

---

[25] UTAH R. CIV. P. 60(b)(5).

decisional law, or a change in the operative facts."[26] And "the burden will be high on those seeking relief on this ground as they must demonstrate extraordinary circumstances justifying relief."[27]

¶29 Next, rule 60(b)(5) "applies to any judgment that has prospective effect" but does not apply where a party seeks to alter a judgment that remedies a past wrong.[28] In other words, aggrieved parties cannot seek relief under 60(b)(5) from a term of the judgment that addresses past action—it "does not allow relitigation of issues that have been resolved by the judgment. Instead it refers to some change in conditions that makes continued enforcement inequitable."[29] And in determining what a "prospective" effect of a judgment is, many circuit courts have held that a "judgment operates prospectively if it requires a court to supervise changing conduct or conditions that are provisional or tentative."[30] The vast majority of these cases deal with injunctions or consent decrees where the terms of the judgment have continued application.[31] For instance, many of these cases deal with institutional reform and

---

[26] 11 CHARLES ALAN WRIGHT & ARTHUR MILLER, FEDERAL PRACTICE AND PROCEDURE § 2863 (3d ed. 2014) (footnotes omitted). In our analysis of this rule, we turn to federal rules for guidance "[b]ecause the Utah Rules of Civil Procedure are patterned after the Federal Rules of Civil Procedure." *Bichler v. DEI Sys., Inc.*, 2009 UT 63, ¶ 24 n.2, 220 P.3d 1203.

[27] WRIGHT & MILLER, *supra* note 26, § 2863.

[28] *Id.*

[29] *Id.* (footnote omitted).

[30] *Moody v. Empire Life Ins. Co. (In re Moody)*, 849 F.2d 902, 906 (5th Cir. 1988); *see also Hall v. C.I.A.*, 437 F.3d 94, 101 (D.C. Cir. 2006) (noting that rule 60(b)(5) is addressed to executory decrees and those requiring supervision of changing circumstances or conditions); *Cook v. Birmingham News*, 618 F.2d 1149, 1152 (5th Cir. 1980) ("The distinction is between restraints that give protection to rights fully accrued upon facts so nearly permanent as to be substantially impervious to change, and those that involve the supervision of changing conduct or conditions and are thus provisional and tentative. Any continuing injunction, for example, would have the requisite prospective effect." (internal quotation marks omitted)).

[31] WRIGHT & MILLER, *supra* note 26, § 2863 (compiling cases).

situations where an emergency situation leads to a party's inability to comply with the terms of a consent decree.[32]

¶30 URI's request here does not qualify under either inquiry. First, URI is seeking to alter a judgment that is remedial in nature; the judgment here does not have prospective application and will terminate immediately upon satisfaction. "Interest" is a specifically defined term under the statute, and prevailing parties are afforded interest by law until the judgment is satisfied. URI attempts to characterize the issue of interest differently, but interest is not a "prospective" effect of a judgment as contemplated by rule 60(b)(5). District courts do not need to supervise the assessment of interest, nor is it a tentative or provisional condition of the judgment. Rather, the statute mandating the payment of ten percent compounding interest is remedial in nature, protecting shareholders who have not been paid the fair value of their respective shares. Because the relief URI seeks cannot be granted under rule 60(b)(5), the district court did not err in denying URI's request to abate interest.

### D. A Satisfaction of Judgment Under Rule 58B Is Required in Order to Abate Interest

¶31 Instead of seeking to abate interest under rules 62 and 60(b), parties may end the accrual of interest by satisfying the judgment under rule 58B of the Utah Rules of Civil Procedure. Because URI failed to seek this relief, the district court did not err in passing on the abatement of interest question. Furthermore, since URI failed to even properly "tender" payment of the judgment, interest never abated in this case.

¶32 We have ruled previously that "[a]n appeal does not stop the running of interest. To obtain such a result, the obligor must make a tender that is rejected by the obligee."[33] This rule raises two questions that our caselaw has yet to clarify: (1) the procedure by which an obligor may seek to abate interest and (2) what constitutes a valid "tender" that would serve to abate interest.

¶33 First, a party may seek to validate its purported tender in order to abate interest on the judgment under rule 58B either "by acknowledgement or order."[34] If a judgment debtor offers a "full satisfaction of the judgment," the judgment creditor must, "[w]ithin

---

[32] *Id.*

[33] *Utah County v. Brown*, 672 P.2d 83, 87 n.9 (Utah 1983) (citation omitted).

[34] UTAH R. CIV. P. 58B(c).

28 days," "file an acknowledgment of satisfaction in the court in which the judgment was entered."[35] If the judgment creditor fails to do so, the judgment debtor may file a motion with the district court and, with "satisfactory proof," the court may "enter an order declaring the judgment satisfied."[36] Once obtained, the order serves to "discharge[] the judgment, and the judgment ceases to be a lien as to the debtors named and to the extent of the amount paid."[37] The "satisfactory proof" necessary for the court to enter such an order may include proof of acceptance of payment or, in the case where payment is refused, it may include proof that the judgment debtor validly tendered payment. In either case, interest will abate as of the date of the tender of the payment, as long as the tender is valid and not "[a] mere offer to pay."[38]

¶34 This brings us to the second question of what constitutes a valid tender. As we acknowledged in *Fitzgerald v. Corbett*, valid tender must be "(1) timely, (2) made to the person entitled to payment, (3) unconditional, (4) an offer to pay the amount of money due, and (5) coupled with an actual production of the money or its equivalent."[39] The parties do not dispute the timeliness of the purported tender, that it was made to the person entitled to payment, or that the amount in question was the amount of money due. But the parties *do* dispute whether there was an "actual production" of the money in this case and whether URI's purported tender was unconditional.

¶35 We conclude, and agree with the Dissenters, that there was no "actual production" of money in this case. A party may be excused from extending actual payment of a judgment if it is obvious that the other party would reject it. As URI notes, "[a]n exception to the general requirements of a valid tender arises where it is plain and clear that a tender, if made, would be an idle ceremony and of no avail."[40] But this argument cannot be made where the party attempting to invoke the exception has never made an *offer* of payment to begin with—there must be evidence that the

---

[35] *Id.* 58B(a).

[36] *Id.* 58B(b).

[37] *Id.* 58B(c).

[38] *Fitzgerald v. Corbett*, 793 P.2d 356, 359 (Utah 1990).

[39] *Id.* (footnotes omitted) (internal quotation marks omitted).

[40] *Id.* (internal quotation marks omitted).

debtor would actually make payment but for the creditor's refusal to accept it.

¶36  To illustrate, in *Zion's Properties, Inc. v. Holt*, a buyer missed the deadline for the final payment on a piece of property, thus forfeiting the property under contract.[41] The buyer argued that it tendered payment before the deadline, but we concluded that it just "discussed with the defendants the prospect that payment would be made [under] certain conditions."[42] We did not address what the conditions were, but found that the gesture was not a valid offer.[43]

¶37  URI's communication with the Dissenters (May 31 email) resembles the situation in *Zion's Properties*. It stated:

> Aside from the appraiser fees, we have also been exploring the possibility of simply paying your clients the current judgment amounts, rather than depositing the money with the court, in order to abate the continued accrual of compound interest while still preserving URI's appellate rights. We think the simplest and most straightforward way to do this would be to enter into a stipulation providing that the judgments are stayed indefinitely and any liens are released, that further interest on the judgments is waived, that your clients would be required to repay URI to the extent the judgments are later reduced or reversed on appeal, and that, in the event they are ultimately affirmed, the judgments would be deemed fully satisfied by this payment and a satisfaction of judgment would be filed.
>
> Would you please let me know as soon as possible if your clients would consider such an arrangement? If so we will begin drafting a proposed stipulation.

The Dissenters' reaction to this email was mixed. On June 11, Hansen rejected URI's proposal, while MTC countered with other stipulations.

¶38  The language used in this email evidences the lack of any definitive offer, since the parties appear to be engaging in negotiations for how payment—if ever—would be made. Stated otherwise, there was nothing for the Dissenters to "accept" because

---

[41] 538 P.2d 1319, 1320–21 (Utah 1975).

[42] *Id.* at 1322.

[43] *Id.*

the proposed stipulation had not even been drafted at that point. URI's suggestions here are not definitive enough to be considered a tender of payment.

¶39 The parties also dispute whether URI's purported tender was unconditional. In conjunction with its email, URI proposed that the parties stipulate to the following: (1) URI's appellate rights would be preserved, (2) the judgments would be stayed, (3) all liens would be released, (4) future interest would be waived, (5) the Dissenters would repay the judgment in case of reversal, and (6) payment would be deemed fully satisfied if affirmed. But we have no need to address whether these conditions rendered URI's purported tender conditional because URI never made an actual production of money, which independently invalidates the purported tender.

¶40 In sum, in order to establish that interest had abated, URI needed to tender payment and then seek a satisfaction of judgment under rule 58B, which it failed to do. Accordingly, the district court properly avoided ruling on the abatement of interest question, since such a request was not properly before it. Furthermore, as we discussed above, to even seek a satisfaction of judgment, URI needed to first tender the full amount of the judgment—whether or not the tender was ultimately accepted. Because URI's proposed stipulation was in the context of negotiations to pay—rather than an offer to pay—its tender was invalid in any event.

**Conclusion**

¶41 The district court did not err in refusing to rule on the abatement of interest issue under rules 62 and 60(b), since district courts are not empowered to abate interest under these rules. Instead, URI could have abated interest by tendering payment and then seeking a satisfaction of judgment under rule 58B. Because URI failed to both submit a valid tender and seek a satisfaction of judgment, it was not error for the district court to refuse to rule on the abatement of interest issue. We accordingly affirm the judgment of the district court.

---